UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| CHARLES E. HARRIS II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 7:10-CV-01229-LSC |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OF OPINION

**I.   Introduction**

The Court has for consideration a motion to dismiss or in the alternative for summary judgment, filed by the United States of America ("United States") (Doc. 30.) Plaintiff Charles Harris ("Harris") sued the United States and six individual U.S. Marshals ("Marshals") for: (1) Use of Excessive Force, (2) Assault and Battery, (3) False Arrest, (4) False Imprisonment, (5) Deprivation of Constitutional Rights, and (6) Vicarious Liability. (Doc. 15.)[1]

---

[1] A motion to dismiss the individual Marshals as defendants was granted and therefore Harris's suit continues only against the United States. (Doc. 24.)

The issues raised in the United States' motion have been briefed by both parties and the motion is now ripe for review. Upon full consideration of the legal arguments and evidence presented by the parties, the motion for dismissal or in the alternative for summary judgment will be granted in all respects.

## II.   Facts[2]

In the afternoon of June 16, 2008, a team of five Deputy U.S. Marshals detained Charles Harris on the street for approximately ten minutes. (Doc. 32-2 at 14.) The Marshals were a part of the Gulf Coast Regional Fugitive Task Force ("Task Force"). The United States Marshal Service ("USMS") has authority to investigate fugitive matters "as directed by the Attorney General," pursuant to 28 U.S.C. § 566(e)(1)(B). The Task Force is a coordinated, multi-agency apprehension effort on specific fugitive cases. (Doc. 32-3 ¶ 3.)

The primary mission of the Task Force is to seek out and arrest persons who have unexecuted state and federal warrants lodged against

---

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

them. Under an agreement, participating agencies detail officers to undertake joint fugitive investigations with the USMS under which the detailed officers operate under the supervision and control of the USMS. (Doc. 32-3 ¶ 5.) Officers designated as Task Force officers are appointed Special Deputy U.S. Marshals and may exercise federal law enforcement powers, including the power to arrest, execute warrants, and use firearms pursuant to 28 U.S.C. § 566.

On June 16, 2008, the Marshals were searching for Willie Brown ("Brown"), a fugitive with two outstanding felony warrants for: (1) trafficking cocaine and other drug possession charges, and (2) second degree assault. (Docs. 32-3 ¶ 2, 26-1, 37 at 3-5.)[3] The team of Marshals was split between two unmarked police vehicles. Around 2:45 p.m. the Marshals received information from the USMS that Brown was in the Skyland Boulevard area of Tuscaloosa, Alabama. (Doc. 32-3 ¶ 7.) Brown was believed to be driving a black 2007 Dodge Charger. (*Id.*) Shortly after receiving this information, the Marshals observed a late model black Dodge Charger in the Hardee's parking lot off Skyland Boulevard. (*Id.* ¶ 8.)

---

[3] As part of this motion for summary judgment, the United States relies on portions of the Declaration of the Marshals. (Doc. 32-3.) In response, Plaintiff moves to strike certain portions of the Declaration as inadmissible evidence. (Doc. 33.) Having reviewed Plaintiff's motion to Strike Inadmissible Evidence, and considering the objections made therein, the Court will rely only on admissible evidence.

The Charger was equipped with heavily tinted windows so that the Marshals were unable to visually identify the driver or any potential passengers. (Doc. 32-2 at 11-12.) Believing that the car was occupied by Brown, the Marshals conducted a "trapping" maneuver and forced the driver to stop his vehicle. (Doc. 32-3 ¶ 9.) The two police vehicles that performed this "trapping" maneuver were unmarked and, according to Plaintiff, the police lights were not turned on. (Doc. 32-2 at 13.)

The Marshals then exited their vehicles and approached the Charger with their guns drawn. (*Id.*) The Marshals yelled at the driver to exit his car, "slammed" the driver's door open, grabbed him about the neck and arms, and "slammed" him to the street. (*Id.* at 14.)[4] As it turned out, the driver of the Charger was not the fugitive Brown, but rather the Plaintiff Charles Harris who also drove a late model black Dodge Charger.

Once face down, the Marshals handcuffed Harris's arms behind his back. (*Id.*) Because he was a large man, at 5′8″ and 265 pounds, the Marshals used two sets of handcuffs. (*Id.*) They attached one set to the other in the middle in order to allow a greater distance between each of Harris's wrists

---

[4] The Marshals offer a less abusive account of the incident, (see Doc. 32-3), however, for purposes of Summary Judgment the court views the facts in a light most favorable to the non-movant.

and take pressure off of his shoulders. (Doc 32-3 ¶ 10.) Harris remained completely compliant during the entire ordeal. (*Id.*)

The Marshals did not immediately give Harris an explanation for his detainment as he lay on the hot asphalt begging and in "agonizing pain." (Doc. 32-2. at 15.) Within five minutes, however, the Marshals helped Harris to a sitting position and Harris produced his identification. (*Id.*) The Marshals examined his identification and verified that he was in fact Charles Harris, not the fugitive Brown. Harris was then released. Approximately ten minutes elapsed from initial contact to release. (*Id.* at 16.)

Harris alleges that as a result of being thrown to the ground and handcuffed, he suffered a painful and debilitating shoulder injury in addition to injuries to his hands and arm. (*Id.* at 15, 17, 18, 21, 22, 29.)

## III. Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[5] The party moving for summary judgment "always bears the initial responsibility of informing the

---

[5] Although FED. R. CIV. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56 advisory committee's note (2010 Amendments).

district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* FED. R. CIV. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV. Analysis

Plaintiff contends that the Marshals were negligent in targeting him. (Doc. 15.) Additionally, he asserts that the Marshals committed a host of intentional torts in carrying out his detainment. (*Id.*) Plaintiff argues that because the Marshals were acting within the line and scope of their employment with the United States, the United States is liable for the Marshals' actions. (*Id.*)

The United States counters that it is immune from negligence liability based on the discretionary function exception. (Doc. 31 at 10.) Additionally, the United States argues that any state law tort claims are barred by the Supremacy Clause. (*Id.* at 14.) Finally, the United States contends that Alabama law provides various defenses and immunities that protect the Marshals' actions, and in turn, shield the United States from any liability. (*Id.* at 18.)

### A. Vicarious Liability and General Negligence[6]

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The Federal Tort Claims Act ("FTCA") provides such a waiver, but

---

[6] Plaintiff's Count VI alleges "Vicarious Liability;" both parties treat this as a claim for general negligence and the Court addresses it accordingly.

does so sparingly, reserving for the federal government various exceptions and limitations. The United States invokes one such limitation known as the discretionary function exception. (Doc. 31 at 10-14) (*citing Mesa v. United States*, 123 F. 3d 1435 (11th Cir. 1997)). This exception preserves sovereign immunity by barring negligence claims that arise out of a government agent's exercise of a discretionary function, even in cases where that discretion is abused. *Mesa*, 123 F. 3d at 1437 (discussing 28 U.S.C. § 2680(a)).

The Supreme Court has fashioned a two-part test to determine whether challenged conduct should be considered discretionary. *United States v. Gaubert*, 499 U.S. 315 (1991). First, the Court must find that the nature of the challenged conduct involved an element of judgment or choice. *Mesa*, 123 F. 3d at 1437-38 (11th Cir. 1997). Second, the judgment or choice must be grounded in considerations of public policy. *Id.* However, "if an employee violates a mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *Gaubert*, 499 U.S. 315, 316 (1991).

### 1. Violations of Mandatory Regulation or Policy

Plaintiff rests his argument in the assertion that the discretionary function exception is not applicable because the Marshals violated federal

statutes and policies which governed their authority to arrest. (Doc. 35 at 5.) First, Plaintiff contends that during the incident the Marshals did not possess a warrant for him or the fugitive Brown. (Doc. 35 at 7.) Alternatively, Plaintiff contests that Brown was only wanted for trafficking cocaine, an allegedly nonviolent crime that does not present sufficient grounds for arrest by U.S. Marshals. (*Id.*)[7]

Plaintiff's legal assertions are without merit; the Marshals' efforts to arrest Brown were well within the scope of their authority. *See* 18 U.S.C. § 3053 (giving Marshals/Deputies authority to arrest, without warrant, persons reasonably believed to have committed a felony or as needed to prevent escape); 28 U.S.C. § 564 (giving Marshals the same powers which a sheriff of the State may exercise). Additionally, the Marshals did possess valid warrants against Brown for drug trafficking and assault, both of which are considered violent crimes. (Doc. 37.) The Marshals did not violate a mandatory statute or policy. The Court will next apply the *Gaubert* test to determine if the challenged conduct is considered discretionary.

---

[7] Plaintiff suggests that the Marshals violated various other statutes or policies, (Doc. 35 at 5-7); however, the specific portions alluded to are taken out of context and do not warrant discussion.

### 2. Two-Part Discretionary Function Test

Plaintiff did not specifically address the two prongs of the *Gaubert* test; however, applying that test, the Court finds that the Marshals' actions are considered discretionary.

"[T]he decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature and involve an element of judgment or choice." *Mesa*, 123 F. 3d at 1438. Additionally, such decisions are "fundamentally rooted in policy consideration," and judicial second-guessing is not appropriate. *Id.*

Like the instant case, *Mesa* involved government officials detaining the wrong person as a result of mistaken identity. There, DEA agents planned and carried out a raid on the home of Pedro Pablo Mesa. *Mesa*, 123 F. 3d at 1437. Although the agents possessed a valid arrest warrant, the agents entered the wrong house and detained the wrong person. *Id.* As it happened, the resident had the misfortune of sharing the same exact name as the subject of the arrest warrant. *Id.* The subsequent suit complained that the agents failed to ascertain the identity of those inside the house before serving

the warrant, and failed to cease detaining the occupants once their true identities should have been known. *Id.*

Despite the DEA agents' mistake, the 11th Circuit held that their actions were necessarily discretionary in nature. *Id.* at 1439. In reaching this conclusion, the court reasoned that agents must weigh factors such as public safety, officer safety, and potential for escape. *Id.* at 1438.

Similarly, the Marshals in this situation had to weigh the urgency of apprehending the fugitive Brown in light of potential threats to the safety of the surrounding public and the officers' own safety. Compared to the DEA agents in *Mesa*, the Marshals in this case were afforded much less time to prepare for the execution of their warrant and verify their target's identity. Additionally, the detainment of Harris occurred on a public street rather than a private home making public safety and swift apprehension a greater concern. Given such circumstances, this Court finds ample support to conclude that the decision to detain Harris was discretionary in nature. Thus, the United States correctly asserts that the discretionary function exception bars Plaintiff's general negligence claims. As such, Count VI is due to be dismissed based upon a lack of subject matter jurisdiction.

B.   **Supremacy Clause**

The United States argues that any state tort claims alleged by Plaintiff are barred by the Supremacy Clause. (Doc. 31 at 14) (directing the Court to *Denson v. United States*, 574 F. 3d 1318 (11th Cir. 2009)). However, because the individual Marshals have previously been dropped as defendants, this Court declines to apply the Supremacy Clause defense under *Denson*.

In *Denson*, a woman tried to enter the United States from Jamaica when two airport Customs officials detained her under suspicion that she was smuggling narcotics in her body. *Denson*, 574 F. 3d at 1323-28. The Customs officials questioned her and then turned her over to a hospital where she remained for over three days. *Id.* The hospital staff subjected her to an aggressive physical search that did not reveal any drug traces. *Id.* After her release, Denson sued the two Customs officials in their individual capacities under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *Id.* at 1323. In addition, Denson also sued the United States for various state tort violations under the FTCA. *Id.*

On review, this Circuit held that the United States could invoke the Supremacy Clause of the Constitution to bar any state tort law claims. *Id.* at 1349. However, the *Denson* court noted that the availability of the

Supremacy Clause defense "depends on whether the evidence [plaintiff] presented against [the individual defendants] in the *Bivens* case was sufficient to withstand their motion for judgment as a matter of law." *Id.* at 1337. Therefore, the court first addressed Denson's *Bivens* claims against the individual Customs officials. *Id.* at 1338. After determining that the Customs officials acted reasonably and followed proper protocol, the court affirmed the district court's dismissal of the *Bivens* claims. *Id.* at 1344. Only then did this Circuit reason that, "[b]ecause Denson failed to prove a constitutional violation in her *Bivens* case, the United States had at its disposal . . . an affirmative defense under the Supremacy Clause of the Constitution." *Id.* at 1344-45. Thus, under *Denson*, the availability of the Supremacy Clause defense hinges on the outcome of the plaintiff's claims against the individual defendants.

In the instant case, the individual Marshals were dropped as Defendants and Harris's *Bivens* claims are no longer at issue. (Doc. 24.) As such, neither party has specifically briefed the issue of whether or not the individual Marshals violated Harris's constitutional rights under *Bivens*. Therefore, the Court is not in a position to review the constitutionality of the Marshals' individual actions in the *Bivens* context. Because the Court will

not address *Bivens* liability, the United States' Supremacy Clause defense under *Denson* is not applicable.

### C. Intentional Torts: Alabama Defenses and Immunities

Plaintiff claims that the United States is liable for various intentional torts allegedly committed by the Marshals in relation to his detainment. (Doc. 15.) In particular, Harris claims the Marshals used excessive force, committed assault and battery, and falsely arrested and imprisoned him. (*Id.*)

The FTCA specifically waives sovereign immunity for certain intentional torts if they are committed by law enforcement officers. *See* 28 U.S.C. § 2680(h) (containing the "law enforcement proviso" which waives immunity if a federal law enforcement officer commits assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution).[8] The United States does not contest the applicability of the "law enforcement proviso" to this case. (Doc. 31 at 10.) Rather, the United States defends on the grounds that Alabama law provides exculpatory defenses and immunities covering the Marshals' conduct. (*Id.* at 18.) In general, these Alabama laws

---

[8] As Plaintiff correctly argued, this Circuit interprets the FTCA to waive immunity for "law enforcement proviso" claims even when the acts giving rise to those claims involved a discretionary function. (Doc. 35 at 8) (citing *Nguyen v. United States*, 556 F. 3d 1244 (11th Cir. 2009)). However, the point is moot as the United States stipulated the same in its motion for summary judgment and did not attempt to argue that Plaintiff's intentional tort claims are barred by the discretionary function exception. (Doc. 31 at 14.)

afford state law enforcement officers the ability to handle potential suspects without exposure to liability that might otherwise apply to private citizens. The United States asserts that the U.S. Marshals are analogous to state officers and are likewise protected by Alabama law.

Plaintiff did not respond to the specific defenses and immunities put forth by the United States; rather, Plaintiff generally directs the Court to *United States v. Olson*, 546 U.S. 43 (2005). (Doc. 35 at 8.) In *Olson*, the Supreme Court interpreted two sections of the FTCA; these two sections are central to the United States' argument. Specifically, the United States relies on:

> Section 1346(b)(1), which authorizes private tort action against the United States "under circumstances where the United States, if a *private person*, would be liable to [Harris] in accordance with the law of [Alabama]." (Emphasis added) 28 U.S.C. § 1346(b)(1).
>
> Section 2674, which makes the United States liable "in the same manner and to the same extent as a *private individual* under *like circumstances*." (Emphasis added) 28 U.S.C. § 2674.

(Doc. 31 at 10.) The United States seemingly relies on an interpretation of the FTCA that would base federal liability on whether or not local state law enforcement officers could be held liable. However, this interpretation of the

FTCA seems to be at odds with the holding in *Olson*. As a result, this Court must address a pertinent, but relatively unsettled issue of law.

In *Olson*, the Supreme Court made it clear that these sections are to be interpreted according to their plain language. *Olson*, 546 U.S. at 44-47. In essence, *Olson* reinforces the idea that FTCA liability hinges on what a *private person* can and cannot do, ignoring any privileges that may come with government employment. *Id.* at 45-46 (discussing § 1346(b)(1)). Furthermore, *Olson* encourages a liberal assessment of "like circumstances." *Id.* at 46-47 (discussing § 2674). By opening the door to looser parallels between government agents and private citizens, *Olson* erodes the protection of "unique government functions." Government agents performing "unique" functions previously received immunity based on a lack of any analogous private sector counterpart (e.g. IRS inspections). For example, the *Olson* Court recognized that federal mine inspectors performed a "unique government function," but found that their legal duty was sufficiently analogous to a private party responsible for inspecting cars, airplanes, cattle, etc. *Id.* at 47.

In effect, *Olson* widens the range of FTCA liability; first by constricting privileges that are available to government employees, then by

expanding the scope of analogous private actions. While the Court takes note that *Olson* involved federal mine inspectors and not law enforcement officers, several Circuits have wrestled with its undeniable effect on law enforcement.[9] The issue arises with the understanding that virtually any arrest, by its very nature, meets the elements for a host of intentional torts. Without some form of protection from liability, federal agents are crippled in their ability to enforce the law.

Various approaches have been taken to avoid this outcome, including the 11th Circuit's reasoning in *Williams v. United States*, 314 Fed. Appx. 253 (11th Cir. 2009) (where an FBI agent intentionally struck a fleeing suspect with his vehicle). The *Williams* court conceded the narrow holding in *Olson*, but relied on Georgia's "arrest by private persons" statute. *Id.* at 259 (citing GA. CODE ANN., § 17-4-60 (2011)). The court then denied liability, determining that under Georgia law, had the FBI agent been a private citizen, his actions would still be reasonable and lawful. *Id.*

Likewise, this Court takes note of Alabama's "arrest by private persons" statute, which makes it lawful for a private person to arrest another where he reasonably believes that person committed a felony. ALA. CODE §

---

[9] *See Tekle v. United States*, 551 F. 3d 839 (9th Cir. 2007); *Villafranca v. United States*, 587 F. 3d 257 (5th Cir. 2009); *T. Lee v. United States*, 570 F. Supp. 2d 142 (D.D.C. 2008).

15-10-7 (1975). In the instant case, the Marshals were seeking a fugitive wanted for two felonies. Though Harris committed no felony, his black Dodge Charger matched the description of the fugitive's car and its heavily tinted windows prevented visual identification. In this context, it was reasonable for the Marshals to believe that Harris was the felon they sought. Furthermore, the Marshals used no more force than reasonably necessary in carrying out a justified and lawful detainment, an issue Plaintiff does not contest. (Doc. 35 at 8.) (*see also Rodriguez v. Farrell*, 280 F. 3d 1341 (11th Cir. 2002) (finding that "[p]ainful handcuffing, without more, is not excessive force" even when a suspect is mistakenly arrested and the handcuffing of that suspect results in amputation of an arm). Therefore, Counts I, II, III, and IV are due to be dismissed.

### D. Constitutional Claims

Count V of Plaintiff's complaint alleges deprivation of various constitutional rights in connection with his detainment. (Doc. 15 at 9.) Neither party addressed these claims in their respective briefs. The individual Marshals have previously been dropped as Defendants, (Doc. 24), and common law bars such claims against the United States. *See F.D.I.C. v. Mayer*, 510 U.S. 471 (1994)(The federal government and its agencies are

immune from suit absent a waiver of sovereign immunity and constitutional claims are not cognizable under the FTCA.).

Furthermore, because Plaintiff fails to make any argument regarding claim V in response to Defendant's motion for summary judgment, the Court finds that Plaintiff's claim V has been abandoned. *See*, *e.g.*, *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

## V.  Conclusion

For the reasons stated above, Defendant's motion for dismissal or in the alternative for summary judgment is due to be granted in all respects. A separate order consistent with this opinion will be entered.

Done this <u>20th</u> day of <u>March 2012</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[167037]
